IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MICHAEL J. LOOMIS,       )
                                        )

              Petitioner,     )     Case No. CV-06-157-S-BLW
                                          )

v.                                  )
                                          )     **MEMORANDUM DECISION**

RANDY BLADES,        )     **AND ORDER**
                                          )

              Respondent.    )
_____ )

## INTRODUCTION

Before the Court in this habeas corpus matter is Respondent's Motion for Summary Judgment. Also pending are Petitioner's renewed motions for DNA testing, the appointment of counsel, and expansion of the record. The parties have adequately briefed the facts and legal issues before the Court, and the Court will dispose of these matters without oral argument. D. Idaho L. Civ. R. 7.1(d)(2).

For the reasons that follow, the Court will grant Respondent's Motion for Summary Judgment, deny Petitioner's renewed motions, and order that the Petition be dismissed.

## BACKGROUND

After a jury trial in Ada County District Court, Michael Loomis was convicted of six counts of burglary. The pertinent facts are set forth in the opinion

**MEMORANDUM DECISION AND ORDER - 1**

of the Idaho Court of Appeals:

> During the winter holiday season of 2001, multiple Boise residences were burglarized.  In the course of investigating those burglaries, Boise police officers received information implicating Loomis.  Loomis' parole office testified that he learned of the burglaries and became concerned that Loomis, who had been unemployed for approximately three months, was involved.  The parole officer requested that the Boise Police Department assist him in searching Loomis' trailer.  When Loomis refused to answer the door, the police forced it open and arrested Loomis for absconding supervision.  As a condition of parole, Loomis agreed to submit to a search of his person or property at any time and place, and waived his constitutional right to be free from such searches.

> In a search, stolen jewelry was discovered hidden in Loomis' trailer.  The police found more stolen property, as well as walkie-talkies and a police scanner radio at Loomis' girlfriend's house, where he had secured permission to store the items in a garage.  Loomis confessed to being a lookout, monitoring the police radio traffic while a partner burglarized the residences.

(State's Lodging B-23, pp. 1-2.)

Loomis was indicted by a grand jury on nine counts of burglary.  The State later amended the charge to allege that Loomis was a persistent violator and that he committed the burglaries by entering, or aiding and abetting another who entered, certain identified residences with the intent to commit the crime of theft.

Loomis waived his right to counsel and represented himself.  One count was dismissed and the case proceeded to trial on the remaining eight counts.  The jury found Loomis guilty of six counts but was unable to reach a unanimous

**MEMORANDUM DECISION AND ORDER - 2**

verdict on two counts. It also found Loomis to be a persistent violator, and the district court sentenced him to an aggregate term of twenty years to life in prison.

Still representing himself, Loomis raised numerous issues on direct appeal, all of which were rejected by the Idaho Court of Appeals. The Idaho Supreme Court declined his Petition for Review.

On April 19, 2006, Loomis filed his Petition for Writ of Habeas Corpus, which he has since amended twice. Respondent Blades has filed an Answer to Loomis's eleven remaining claims of constitutional error, and Respondent has submitted a Motion for Summary Judgment. Loomis has responded to the Motion for Summary Judgment and has filed his own motions for DNA testing, the appointment of counsel, and expansion of the record. These matters are fully briefed, and the Court is now ready to rule.[1]

## STANDARD OF LAW

The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. *See* Rule 11 of the Rules Governing Section 2254 Cases. Under Rule 56(c), summary judgment is appropriate if the "pleadings,

---

[1] The Court will address Loomis's motions, which are in the nature of requests for discovery and augmentation of the record, when it discusses the individual claims to which they pertain.

**MEMORANDUM DECISION AND ORDER - 3**

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Id.* In general, summary judgment is not inconsistent with habeas practice and procedure*, see Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977), but a motion for summary judgment in a habeas case must be reviewed in light of the substantive provisions of the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA").

The AEDPA requires a federal court to defer to reasonable state court adjudications on the merits of constitutional claims. Accordingly, an application for writ of habeas corpus shall not be granted unless the state court's adjudication of a claim either:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)&(2).

Section 2254(d)(1) contains a "contrary to" and an "unreasonable application" clause, each with an independent meaning. To show that a decision is "contrary to" federal law, a petitioner must establish that the state court applied "a rule of law

**MEMORANDUM DECISION AND ORDER - 4**

different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

Under the "unreasonable application" clause, the petitioner must establish that the state court was "unreasonable in applying the governing legal principle to the facts of the case." *Id*. at 413. A federal court cannot grant relief simply because it concludes in its independent judgment that the state court decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002). Although the controlling federal law is derived from the holdings of United States Supreme Court cases, a federal court may look to lower court cases for persuasive guidance as to what is a reasonable interpretation of the law. *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000).

Section 2254(d)(2) is applicable to a review of a state court's factual findings. Under that subsection, the petitioner must show that the state court's decision was based upon factual determinations that were "unreasonable in light of the evidence presented in the State court proceeding." *Id*.

## DISCUSSION

MEMORANDUM DECISION AND ORDER - 5

1.      The Right to Present a Closing Argument (Claim 1)

Loomis argues that he was denied his Sixth Amendment right to a fair trial and to self-representation because the trial court interrupted his closing argument several times, informing him that he "could not testify as to things not in evidence."  (Docket No. 31-1, p. 6.)  Loomis also contends that the trial court's interruptions impaired his ability to present his theory of the defense to the jury.

The Idaho Court of Appeals concluded that the trial court acted within its discretion in preventing Loomis from using his closing argument to present evidence that had not been admitted at trial.  (State's Lodging B-23, p. 13.)  That decision was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

Though Loomis clearly had a Sixth Amendment right to represent himself under *Faretta v. California*, 422 U.S. 806, 818-19 (1975), his choice to invoke that right did not bring with it "a license to abuse the dignity of the courtroom [or] not to comply with the relevant rules of procedural and substantive law."  *Id*. at 834 n.46.  And while it is true that the Supreme Court has held that criminal defendants, including *pro se* defendants, have a due process right to present a closing argument, trial judges are given ample discretion to "ensure that argument

**MEMORANDUM DECISION AND ORDER - 6**

does not stray unduly from the mark, or otherwise impede the fair and orderly

conduct of the trial." *Herring v. New York*, 422 U.S. 853, 862, 864 n.18 (1975).

    Here, the trial court intervened after Loomis made each of the following

comments:

> • Baldwin [originally a co-defendant] can barely tie his own shoes. All kinds of people take advantage of him, but believe me, he's no burglar. What I said about him, I – you know, thought [sic] piece of shit for saying it, I was willing to say anything to get out of charges. But I really did make up that story.

> • I've been screaming up and down for a DNA test. They wouldn't give me a DNA test. So they insinuate, okay, it wasn't his blood, then it must have been yours.

> • I had already made up my mind before I went in there what I was going to say. I was going to say Baldwin. I was looking for a way to get out of –

> • Well I remember Nancy Summers was around Baldwin all the time when I seen them. For awhile they were arm in arm.

(State's Lodging A-3, pp. 1200-1205.)

    All of these comments were related to what Loomis personally saw, thought,

or did, but because he had elected not to testify, these facts were not in evidence.

Nothing in *Faretta* or *Herring* prevents a trial court from controlling a defendant

whose final summation falls outside of the bounds of proper argument, and the trial

judge here was rightly concerned that Loomis may have been attempting to

interject his testimony into the case without being subjected to the prosecutor's

**MEMORANDUM DECISION AND ORDER - 7**

cross-examination.  *Cf. Cole v. Tansy*, 926 F.2d 955, 958 (10th Cir.1991) (holding

that the trial court could prohibit argument "about possible fabrication by [a

witness when no] evidence had been presented at trial to support this allegation");

*Richardson v. Bowersox*, 188 F.3d 973, 980 (8th Cir. 1999) (same).

   For this reason, the Court disagrees with Loomis that *United States v.*

*Miguel*, 338 F.3d 995 (9th Cir. 2003), is "directly on point."  (Docket No. 71, p. 1.)

There, the defendant had been convicted of felony murder based on the death of a

man who had been shot while he was standing in an area where several people had

congregated.  *Id*. at 997-98.  The physical evidence and the testimony suggested

that the defendant and the shooter may have been in different locations.  *Id*. at 999.

When the defendant's counsel attempted to argue that another person fired the gun,

the trial judge stated that there was not a "shred of evidence" to support that theory,

and he prohibited counsel from making the argument.  *See Id*.  On appeal, the

Ninth Circuit disagreed and reversed.  Citing *Herring*, it concluded that it was error

to shut down an argument, reasonably supported by the evidence, that was related

to the theory of defense.  *Id*. at 1001-02.

   In contrast, Loomis was not prevented from arguing his theory that his

confession to police detectives was false.  Throughout the trial, he was allowed to

highlight the inconsistencies between some of his pretrial statements and the

**MEMORANDUM DECISION AND ORDER - 8**

physical evidence, and he was permitted to argue to the jury that these supposed "lies" tainted the legitimacy of his entire confession.  Although the court did not allow Loomis to discuss facts outside of the evidence, this ruling did not deprive him of any of his constitutional rights.

Therefore, this Court concludes that the Idaho Court of Appeals' adjudication of this claim was reasonable, and Loomis cannot show that he is entitled to relief under the standards contained in 28 U.S.C. § 2254(d).

### 2.    *Griffin* Error (Claim 2)

In his second claim, Loomis contends that the trial court made statements in front of the jury that called attention to his failure to testify, in violation of his Fifth Amendment privilege against self-incrimination.  The clearly established federal law in this area is derived from *Griffin v. California*, 380 U.S. 609 (1965).  In *Griffin*, the Supreme Court held that the Constitution "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."  *Id*. at 615.

Initially, Loomis cites a portion of the transcript in which he was asking a witness about a burglary that she had apparently observed.  (State's Lodging A-3, pp. 1080-81.)  At one point, the trial court asked, "Could we get a year or month, day?  Any of those kinds of things, Mr. Loomis?"  (State's Lodging A-3, p. 1081.)

**MEMORANDUM DECISION AND ORDER - 9**

Loomis responded, "2001," to which the court said, "I'm sorry.  You can't testify without taking the stand, sir.  You need to ask this witness what year we're talking about."  (State's Lodging A-3, p. 1082.)  This Court sees nothing in this exchange tending to suggest that Loomis's failure to testify "is evidence of guilt." *Griffin*, 380 U.S. at 615.  Instead, the trial judge was merely reminding Loomis that he was required to ask the witness a question and then receive a response, rather than blurt the answer out himself, unless he took the stand and testified.

Loomis next points to the instances during his closing argument in which the trial court admonished him that he could not use his final summation as an opportunity to testify.  Here, again, the court was attempting to hold Loomis to the proper procedure by limiting his closing argument to the facts that were in evidence.  Given this context, the jurors would not have naturally or necessarily taken the court's comments as instructions to infer Loomis's guilt because of his decision to invoke his privilege against self-incrimination.  *See Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987).  Furthermore, the trial court instructed the jury in writing that Loomis had a constitutional right not to testify and that no inferences could be drawn from his decision.  (State's Lodging A-20, Instruction No. 24A.)

The Idaho Court of Appeals' adjudication of this claim is neither contrary to

**MEMORANDUM DECISION AND ORDER - 10**

nor an unreasonable application of *Griffin*.

3.      Equal Protection and Due Process Violation–Closing Argument
        (Claims 3 and 4)

In his third and fourth claims, Loomis continues with this same theme and contends that the trial court's disruption of his closing argument, when compared with the court's failure to correct what Loomis perceives to be misstatements in the prosecutor's closing argument, denied him "equal footing" with the State and rendered his trial fundamentally unfair.

For the reasons expressed above, Loomis has not shown that the trial judge's interruption of *his* argument violated the Constitution, and that matter will not be discussed further.  To the extent that he also complains about the judge's failure to intervene during the prosecutor's argument, this Court agrees, for the most part, with the Idaho Court of Appeals' conclusion that the prosecutor's comments were "within the broad range of  fair comment on the evidence as opposed to expression of personal belief."  (State's Lodging B-23, p. 12.)

The bulk of Loomis's examples of what he believes to be improper argument were not.  Contrary to his claim that the prosecutor personally vouched for the witnesses, the Court finds no evidence that the prosecutor improperly suggested that he had personal knowledge about a particular witness's credibility based on outside sources.  *See, e.g., United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 11**

1991) (defining "vouching" as "placing the prestige of the government behind the witnesses through personal assurances of their veracity or suggesting that information not presented to the jury supports the witnesses' testimony") (citations omitted).  Additionally, the prosecutor's contention that the State needed to prove only the elements of the crimes charged beyond a reasonable doubt rather than all of the factual "details" in the case is essentially a correct statement of the law.  *See Leavitt v. Arave*, 383 F.3d 809, 822 (9th Cir. 2004) (reaffirming that "the prosecution need not prove every fact in the case beyond a reasonable doubt so long as it proves every *element* beyond a reasonable doubt").

On the other hand, the prosecutor's statements regarding the traumatic effect that the burglaries had on the victims–while based on testimony that had been presented at the trial–came close to the line of an improper appeal to the jury's sympathy.  But those comments were minimal, and Loomis has failed to show that any alleged misstatements "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *See Donnelly v. DiChristoforo*, 416 U.S. 637, 643 (1974).  Relief on Claims 3 and 4 shall be denied.

4.   Right to Present a Defense–DNA Testing (Claim 5)

As part of the investigation into a string of burglaries, police officers discovered blood at one of the crime scenes.  When confronted with this fact

**MEMORANDUM DECISION AND ORDER - 12**

during his post-arrest interview, Loomis told detectives that his alleged

accomplice, Darrell Baldwin, had cut himself in one of the homes.  Baldwin's

DNA was extracted and profiled, but it did not match the blood that had been

found.

In a pretrial motion, Loomis requested that his own DNA profile be created

so that it could also be compared with the blood evidence from the crime scene.

That request was denied.  Loomis was not charged with the burglary of this home,

but the prosecutor stipulated to allowing him to introduce Baldwin's negative DNA

test, which Loomis argued contradicted his pretrial statement to the police and

showed that his confession to all of the charged burglaries must also be false.

In his fifth claim for relief, Loomis contends that the trial court's denial of

the motion for his own DNA test deprived him of the right to present a complete

defense.  He argues that if he had been permitted to establish that the blood left by

the burglar in one of the homes was neither Baldwin's nor his own, and because all

of the crimes were supposedly committed by the same burglars, then it would be

more likely that he did not commit any of charged burglaries.

As Loomis notes, the Due Process Clause of the Fourteenth Amendment

entitles an indigent criminal defendant to the basic tools necessary for an adequate

defense, including, when appropriate, the assistance of experts at State expense.

**MEMORANDUM DECISION AND ORDER - 13**

*Ake v. Oklahoma*, 470 U.S. 68, 76, 77 (1985) (quotations omitted).  The Sixth and

Fourteenth Amendments also guarantee criminal defendants a meaningful

opportunity to present evidence in support of a complete defense.  *Crane v.*

*Kentucky*, 476 U.S. 683, 689-690 (1986) (quoting *California v. Trombetta*, 467

U.S. 479, 485 (1984).

A defendant's right to present evidence in support of his defense, however,

is subject to reasonable restrictions based upon other legitimate interests in the

criminal trial process.  *United States v. Scheffer*, 523 U.S. 303, 308 (1998)

(citations omitted).  For instance, a defendant does not have the right to present

evidence that is "incompetent, privileged, or otherwise inadmissible under standard

rules of evidence."  *Taylor v. Illinois*, 484 U.S. 400, 424 (1988).

In this case, the Idaho Court of Appeals noted that the blood evidence from

the uncharged crime scene was not "sufficiently related to the charged offenses to

warrant the expense of testing and the question whether Loomis had fabricated his

confession was within the province of the jury to determine."  (State's Lodging B-

23, p. 9.)  The Court of Appeals ultimately concluded that "[t]he results of further

DNA testing here could neither exculpate Loomis nor impeach his confession."

(State's Lodging B-23, p. 9.)  Loomis has not shown that this decision is either

contrary to or an unreasonable application of *Ake*, *Crane*, or other clearly

**MEMORANDUM DECISION AND ORDER - 14**

established law as determined by the Supreme Court.

First, the state court determined correctly that an additional DNA test would not have impeached Loomis's confession.  Because he did not tell the police that *he* had cut himself inside one of the homes, a DNA test excluding him as the source of the blood would not have been inconsistent with what he told the officers; hence, it was not relevant to his theory that his confession was false.

Nevertheless, Loomis maintains that the evidence was needed to rebut the implication left with the jury that if the blood was not Baldwin's, then it must have been his.  This Court is not persuaded that such a scenario was nearly as prominent as Loomis suggests.  He was not on trial for this burglary, and to the extent that it became an issue in the case, it was because he made it so.  At any rate, a negative test would not have been exculpatory, as Loomis seems to believe.  While such a result may have established that some person other than he or Baldwin bled in the residence, it would not exclude the possibility he assisted that person, either as a lookout (consistent his pretrial statement) or as a participant in the entry of the home.

For similar reasons, if an error occurred, it did not have a substantial and injurious influence or effect on the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  The evidence supporting Loomis's guilt included the discovery of

recognizable stolen jewelry in his trailer home.  The police also found more stolen property, walkie-talkies, a police scanner, lockpick tools, and a book on "How to Defeat the Burglar Alarm" interspersed among Loomis's personal effects in a neighbor's garage.  At trial, he provided no explanation for his possession of this property.

Also, the investigating detectives testified that during his confession Loomis displayed detailed knowledge of various features of the homes that had been burglarized.  Although he tried to argue that the detectives had suggested those details to him and he merely regurgitated the facts back to them, he made little headway in proving that point.

In short, the physical evidence matched Loomis's confession in material and important respects, even though he may have "lied" about some marginal or tangential matters.  Accordingly, even if a DNA test would have excluded Loomis as the depositor of the blood at one uncharged crime scene, as he alleges, such evidence would have added little to the defense in light of the overwhelming evidence of guilt on the burglaries for which Loomis was convicted.

The Court will also deny Loomis's renewed motion for DNA testing.  A federal court has the authority to grant discovery in a habeas case when there is "reason to believe that the petitioner may, if the facts are fully developed, be able

**MEMORANDUM DECISION AND ORDER - 16**

to demonstrate that he is . . . entitled to relief." *See Bracy v. Gramley*, 520 U.S.

899, 908-09 (1997) (*citing Harris v. Nelson*, 394 U.S. 286, 295 (1969)); *see also*

Rule 6(a) of the Rules Governing Section 2254 Cases.  Because a DNA test would

not assist Loomis in demonstrating that he is entitled to relief, the Court finds that

he has not shown good cause for discovery.

     5.   <u>Right to Confrontation (Claim 6)</u>

     Next, Loomis contends that his Sixth Amendment right to confrontation was

violated when the trial court allowed the lead detective to give non-responsive

answers "to nearly all questions asked of him over continuous objections."

(Docket No. 31-1, p. 43.)  Loomis also objects to the trial court's remark to one of

his questions that "if you have garbage in, you get garbage out."  *Id.*

     The "[t]he main and essential purpose of confrontation is to secure for the

opponent the opportunity of cross-examination."  *Davis v. Alaska*, 415 U.S.

315-316 (1974).  A trial judge is permitted to impose reasonable limits on cross-

examination, without violating a defendant's right to confrontation, based "on

concerns about, among other things, harassment, prejudice, confusion of the issues,

the witness' safety, or interrogation that is repetitive or only marginally relevant."

*Delaware v. Van Ardsall*, 475 U.S. 673, 679 (1986).  In other words, "the

Confrontation Clause guarantees only an *opportunity* for effective

**MEMORANDUM DECISION AND ORDER - 17**

cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).

In rejecting this claim, the Idaho Court of Appeals determined that the trial court acted within its discretion in controlling the mode and manner of the examination of the witnesses.  (State's Lodging B-23, p. 10.)  Specifically, the Court of Appeals wrote, "Loomis became increasingly upset during his examination of the detective for the simple reason that Loomis was unable to control the content or the manner of the detective's answer."  (State's Lodging B-23, p. 10.)  This Court has reviewed the record and agrees.

Often, but not always, Loomis's questions allowed for narrative responses from the witness.  On some occasions, he asked questions that were not clear, and the trial court's comment about "garbage in, garbage out" falls within that context. This particular analogy was perhaps not the most appropriate, but the judge meant that a question that is not clear and focused will likely receive an answer that is not clear and focused.  At other points, the judge had to remind Loomis to ask questions rather than provide statements.  The risk that a *pro se* defendant will not be skilled or effective in the art of examining witnesses is, of course, one of the dangers of waiving the assistance of counsel.

**MEMORANDUM DECISION AND ORDER - 18**

Notably, Loomis does not appear to argue that the trial court limited the scope of the permissible subjects that he could explore on cross-examination. *Cf. Davis*, 415 U.S. at 317. Instead, he contends that the detective was permitted to give *too much* information. But Loomis did not have a constitutional right to a "cross-examination that is effective in whatever way, and to whatever extent, [he] might wish." *Fensterer*, 474 U.S. at 20. Consequently, he has not established that the Idaho Court of Appeals' decision on this issue is contrary to or an unreasonable application of clearly established federal law.

6.    Jury Instruction (Claim 7)

Loomis contends that he was deprived of his Sixth and Fourteenth Amendment right to a jury instruction on his theory of defense when the trial court declined to give his proposed instruction on a "fact based False Confession Theory." (Docket No. 31-2, p. 53.)

While a criminal defendant is entitled to an instruction on a defense that is recognized at law if there is sufficient evidence before the jury to support a finding in the defendant's favor, *see Mathews v. United States*, 485 U.S. 58, 63 (1988), Loomis has provided no authority, and the Court is aware of none, that requires a trial court to instruct the jury on a "fact-based false confession theory."

Loomis's reliance on *Crane v. Kentucky*, 476 U.S. 683 (1986), is misplaced.

**MEMORANDUM DECISION AND ORDER - 19**

In *Crane*, the Supreme Court has held that a criminal defendant has a constitutional right to present *evidence* to prove that his confession is false, but the Court did not hold that the defendant is entitled to a jury instruction on a false confession theory. The absence of authority mandating such an instruction makes sense, given that the truth or falsity of a confession is a factual determination, not a question of law, that hinges on credibility issues that are well within the abilities of jurors to sort out.

In addition, one of Loomis's proposed instructions informed the jury that he had, in fact, presented evidence that his confession was false. This type of instruction is improper under Idaho law because it comments on the weight and credibility to be assigned to the evidence. *See, e.g., State v. Fetterly*, 886 P.2d 780, 781-82 (Idaho Ct. App. 1994).

Loomis has not shown that he is entitled to habeas relief on this claim under 28 U.S.C. § 2254(d).

### 7.   Biased Judge (Claim 8)

In this claim, Loomis alleges that the trial judge was biased against him. In support, he cites numerous comments by the judge, and exchanges between himself and the judge, which he contends proves that the judge ridiculed him, made disparaging comments, and lectured him. The Idaho Court of Appeals' conclusion that Loomis had failed to show bias was not contrary to or an unreasonable

application of clearly established federal law.

There is no dispute that a fair proceeding in front of an impartial judge is a basic component of due process under the Fourteenth Amendment.  *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821-22 (1986); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927).  "Fairness requires the absence of actual bias in the trial of a case."  *In re Murchison*, 349 U.S. 133, 136 (1955).

However, a judge is presumed to have properly discharged his or her official duties, and a litigant must overcome a strong presumption that the judge is not biased or prejudiced.  *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (citation omitted).  The Supreme Court has indicated that comments "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or impartiality challenge."  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Expressions of emotion that may reflect "impatience, dissatisfaction, annoyance, and even anger," are "within the bounds of what imperfect men and women, even . . .  judges, sometimes display," unless the comments "reveal such a high degree of favoritism or antagonism . . . so as to make fair judgment impossible."  *Id*.

In finding this claim to be without merit, the Idaho Court of Appeals concluded:

**MEMORANDUM DECISION AND ORDER - 21**

> [O]ur review of the record reveals that Loomis' allegations of judicial
> bias are unfounded.  To the contrary, the transcript of the suppression
> hearings and the trial indicates that the district court exercised
> considerable patience and professionalism in conducting the proceedings
> against Loomis.

(State's Lodging B-23, p. 9.)  This Court shares the Idaho Court of Appeals'
interpretation of the record.

The comments about which Loomis objects usually reflect the trial judge's
attempts at maintaining decorum and order in the courtroom.  Loomis often
interrupted the judge and argued with him when he received an unfavorable ruling.
(*See*, *e.g.*, State's Lodging B-23, pp. 986-99; 1207-1216; 1297-1301.)  He became
so agitated on a few occasions that the judge was required to call recesses to allow
him to calm down, and he was ejected from the courtroom after the jury began its
deliberations on the persistent violator charge.  (State's Lodging B-23, p. 1312-
1313.)  To the extent that some of the judge's comments may have showed his
"impatience, dissatisfaction, annoyance, and even anger,"  Loomis has not
established that these expressions of emotion were of such an extreme degree as to
"make fair judgment impossible."  *Liteky*, 510 U.S. at 555.

Similarly, the Court will deny Loomis's renewed motion to expand the
record under Rule 7 of the Rules Governing Section 2254 Cases by ordering the
transcription of additional pretrial hearings, which he contends would show other

**MEMORANDUM DECISION AND ORDER - 22**

disparaging comments from the trial judge.  Regardless whether Loomis exercised

reasonable diligence in attempting to get these transcripts before the Idaho

appellate courts, an expanded record would not assist him in showing that he is

entitled to relief.  The current transcript contains over 1300 pages, which includes a

dozen separate pretrial appearances, and the interaction between Loomis and the

trial judge is exhaustively detailed in this record.  Given the consistent nature of

the interactions in the lengthy pretrial and trial transcripts that have been produced,

the Court concludes that Loomis would not be able to demonstrate that he was

deprived of his constitutional right to a fair and impartial judge if he were given

access to the few missing pretrial hearings.

       8.    <u>Biased Jury (Claim 9)</u>

Loomis's ninth ground for relief combines aspects of his first, third, fourth

and eighth grounds, but he specifically alleges that the trial judge's actions and

comments on the record prejudiced the jury against him.

There is no evidence that the jury was not fair and impartial, and for the

reasons already expressed, this claim shall be denied.

       9.    <u>Equal Protection and Due Process Violation–Failure to Provide Transcripts (Claim 10)</u>

Loomis next asserts that the failure of the state courts to grant his request to

include the transcripts of all pretrial hearings violated his due process and equal

**MEMORANDUM DECISION AND ORDER - 23**

protection rights to full appellate review of his judicial bias claim.

While the United States Supreme Court has held that an indigent defendant "must be afforded as adequate appellate review as defendants who have money enough to buy transcripts," *Griffin v. Illinois*, 351 U.S. 12, 15 (1956), this rule does not "translate automatically into a complete verbatim transcript," as long as the state affords the defendant a "record of sufficient completeness to permit proper consideration of (his) claims." *Draper v. Washington*, 372 U.S. 487, 496 (1963).

As noted above, the record was sufficiently complete on the judicial bias issue for full appellate review of the claim, and the additional transcripts would not have assisted Loomis in establishing error. Therefore, he has not shown that the Idaho Court of Appeals' decision on this claim is contrary to or an unreasonable application of clearly established federal law.

10.   Cumulative Error (Claim 11)

The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal. *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007). This Court does not believe that Loomis has established any individual constitutional errors in the state court proceedings, but if an error or errors did occur, they were minimal and did not affect his substantial rights. He has not

**MEMORANDUM DECISION AND ORDER - 24**

demonstrated that the Idaho Court of Appeals' application of the cumulative error doctrine was objectively unreasonable.

11.   <u>Conclusion</u>

After carefully reviewing the record and the parties' arguments, and for the reasons given herein, the Court concludes that Respondent is entitled to judgment as a matter of law.  His Motion for Summary Judgment shall be granted.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED:

1.   Petitioner's Renewed Motion for DNA Blood Testing (Docket No. 50-1) is DENIED;

2.   Petitioner's Renewed Motion to Appoint Counsel (Docket No. 50-2) is DENIED;

3.   Petitioner's Renewed Motion to Expand the Record Under Rule 7 (Docket No. 51) is DENIED;

4.   Respondent's Motion for Summary Judgment (Docket No. 58) is GRANTED.



DATED:  **February 15, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 25**